## WEATHERMAN v. BURTON et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

' No. 2136.

Estoppel ☞68(4)—Bankrupt and trustee held estopped to set up equitable defense to judgment.

    Where bankrupt, sued in a state court, contended that the suit was not cognizable in equity, and procured its transfer to the law side of the court, where judgment was rendered against him, he and his trustee were estopped to claim the right to set up an equitable defense to the judgment, when sought to be proved in the bankruptcy proceeding.

Appeal from the District Court of the United States for the Western District of Virginia, at Danville, in Bankruptcy; Henry Clay McDowell, Judge.

In the matter of J. N. Milliner, bankrupt; F. P. Burton, trustee. J. D. Weatherman appeals from an order disallowing his claim. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Aubrey R. Bowles, Jr., and Henry C. Riely, both of Richmond, Va. (McGuire, Riely & Eggleston, of Richmond, Va., on the brief), for appellant.

W. H. Gravely, of Martinsville, Va. (R. E. Woolwine, and Beirne Stedman, both of Stuart, Va., and Taylor & Broaddus, of Martinsville, Va., on the brief), for appellees.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The appellant, Weatherman, filed as a claim in bankruptcy a judgment against the bankrupt for $2,165.27 recovered by him in the circuit court for Patrick county, Va., shortly before the filing of the petition upon which adjudication was had. The bankrupt and his trustee excepted to its allowance, asserting that they had the right to call upon a court of equity of Virginia to review it, so that they might set up certain defenses not made in the action at law. The learned District Judge held that a state court exercising equity jurisdiction could reopen the judgment and that a federal court of bankruptcy had the like power. The conclusion we have reached as to his first holding relieves us from the duty of considering the second, which we are content to assume is correct, although we do not have occasion so to decide.

Weatherman and one Gates had been partners in running a country store. It had not prospered, and they agreed in writing to dissolve the firm and turn the business over to Gates. Weatherman had contributed $1,700 as capital. To repay him, Gates gave him two notes, for $850 each. Weatherman was to take all the outstanding firm accounts which might be collected, and a lien upon the stock of goods and upon a Ford car and a crop of corn belonging to Gates. He undertook to pay the firm debts, as to which the agreement said:

"It is further agreed that the liabilities of the above-mentioned firm is (sic) $2,600."

For this sum Gates contracted to give Weatherman a conditional note, with the bankrupt as surety. It was further provided:

"Said lien and the $2,600 note is (sic) executed to J. D. Weatherman with the conditions that, if the said J. D. Weatherman shall have to pay any or all the liabilities of the said above-mentioned firm, then the lien and the conditioned note, with the security on said note, shall be liable to the said J. D. Weatherman for what amount the said J. D. Weatherman shall have to pay on the liabilities of said firm, * * * and the conditional note and lien as above mentioned is to become due six months from the date of this contract and if the accounts is (sic) collected, and the liabilities of said firm all paid off before the note and lien becomes due, then the said J. D. Weatherman shall deliver them to the said D. H. Gates."

The bankrupt, with Gates and another, executed and delivered to Weatherman their note under seal, promising six months after date to pay him $2,600, "conditioned as per contract of the same date." It turned out that the firm owned more money than the agreement stated, so that Weatherman was called on to pay its debts to the amount of $4,451.15. He enforced his lien on the stock of goods and sold them for $1,386.55, and he collected on the accounts $744.14, or

$2,130.69 in all. He got nothing from the crop, so that he had paid $2,320.40 more than he received. Gates refused to surrender to him the Ford car. In this state of things he filed a bill in equity in the circuit court for Patrick county, Va., against Gates, the bankrupt, and the other surety. In it he set forth the facts above stated, and said that he had made application to the bankrupt and his co-surety to pay $2,320.40 on the $2,600 note, but they had refused to do so. He asserted that he had the right to go into equity because (a) his lien on the Ford car created an equitable interest therein; (b) the $2,600 note was conditioned to save him harmless from the payment of the firm debts; (c) a multiplicity of suits would be thereby avoided; (d) of the many complications; and (e) all the parties could be brought before the court and the whole matter settled in one decision. He averred that he was without an adequate remedy at law.

The bill prayed, among other things, that the Ford car should be sold and its proceeds applied to the payment of the firm debts, that the amount of them paid by the complainant should be declared, and that the bankrupt, his co-surety, and Gates be required to pay upon the $2,600 note the sum by which the aggregate of these debts exceeded the total realized or to be realized from the accounts, the stock of merchandise, and the Ford car. The bankrupt and the others sued with him thereupon filed what they called an answer and cross-bill. In it, they gave at length their version of the transactions among the parties, and set up all the equities upon which they now rely, but they expressly did all this without prejudice to their insistence that Weatherman's claim was not cognizable in equity and that he had an adequate remedy at law. Upon hearing, the learned judge agreed with them, and ordered that the cause proceed on the law side of the court.

In the action at law, issues were joined upon the defendants' pleas of nil debet and conditions performed. At the trial the court instructed the jury that the defendants owed Weatherman the difference between the amount he had paid on the firm debts and such sums as he had realized from the stock of goods and accounts receivable. In consequence a verdict was returned in his favor for the amount for which the judgment now in controversy was subsequently entered.

The bankrupt persuaded the state court that the case was not one in equity. He and his trustee now say that it is only in equity that justice can be done. We are not prepared to hold that a litigant may, in such fashion, play fast and loose with his adversary and with the court. It is true that, under sections 6145 and 6146 of the Code of Virginia, a defendant, sued at law, has the option of pleading an equitable defense, or of leaving it there unpleaded, and of subsequently seeking relief in equity against any judgment at law which may be rendered against him; but the learned and zealous counsel for the bankrupt and his trustee has not cited any precedent sanctioning what the bankrupt is here seeking to do. We are certainly not willing to make one.

Moreover, so far as we can see, the real defense was as available at law as in equity. It was not necessary to invoke the larger powers of the latter to enable proof to be given that Weatherman had repre-

sented the debts of the firm to be $2,600, for that he had done over his signature in the contract sued on at law. The defendants are really complaining of the construction the state court put upon the agreement. Correction of the error there made, if there was one, should have been sought from the Supreme Court of Errors and Appeals of Virginia, and not from a court of equity, whether of the state or of the nation.

It follows that, under the circumstances here presented, it was error to reopen the judgment. It should have been allowed as a claim against the bankrupt estate, without prejudice, of course, to any offsets growing out of independent transactions between Weatherman and the bankrupt.

Reversed.